UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | Cr. No. V-02-11 |
| v. | § | C.A. No. V-04-71 |
| | § | |
| THOMAS TAYLOR, | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Thomas Taylor's ("Taylor") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. #91).[1] Taylor has also filed a memorandum in support of his pending motion. (Dkt. #92). The Court ordered the Government to respond, and the Government has filed an answer and motion to dismiss. (Dkt. #94). Taylor has not responded to the Government's motion to dismiss. For the reasons set forth herein, the Court Grants the Government's motion to dismiss and DISMISSES Taylor's motion. Additionally, the Court DENIES Taylor a Certificate of Appealability.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

### II. BACKGROUND

#### A.     Procedural History

On February 21, 2002, a two count indictment naming Taylor and David Pena ("Pena") as defendants was returned. (Dkt. #1). Count One of the indictment charged a conspiracy to

---

[1] Docket entry citations are made in reference to the criminal case, Cr. V-02-11.

1

possess 503 grams of pseudoephedrine with the intent to manufacture methamphetamine. (Dkt. #1). Count Two of the indictment charged the knowing and intentional possession of 503 grams of pseudoephedrine with the intent to manufacture methamphetamine. (Dkt. #1).

Subsequent to the date of the return of the indictment, Taylor retained William Witbeck Torrey ("Torrey") to serve as his attorney. (Dkt. #11). The case proceeded to a jury trial on May 21, 2002, which concluded on May 22, 2002. Torrey represented Taylor throughout his trial. (Dkt. #37); (Dkt. #39). Ultimately, the jury acquitted Pena and Taylor of the offense charged in Count Two, but convicted both defendants of the offense charged in Count One.

Taylor was sentenced on September 3, 2002. Torrey was present and continued to represent Taylor at his sentencing. (Dkt. #72). During the sentencing hearing, Torrey withdrew an objection to the amount of contraband attributable to Taylor after talking to a Texas Department of Public Safety ("DPS") chemist and a Probation Officer. (Dkt. #72). Taylor was then sentenced to 140 months in prison to be followed by three years of supervised release.

After Taylor's sentencing, Torrey moved to withdraw from his representation of Taylor. (Dkt. #69). The Court granted this motion. (Dkt. #76). Attorney Joe A. Salinas, III was appointed to represent Taylor on appeal. (Dkt. # 78). Both Pena and Taylor pursued unsuccessful appeals. *United States v. Pena*, no. 02-41241, 2003 WL 21946420 (5th Cir. August 14, 2003)(unpublished). On August 4, 2004, Taylor filed the present motion to vacate. (Dkt. #91).

    B.    **Trial Testimony**

        1.    **Government's Case-In-Cheif**

During its case-in-chief, the Government presented evidence supporting the following

sequence of events. On December 13, 2002, at approximately 7:30 P.M., Clara Bradley ("Clara") and her husband Gene Bradley ("Gene") were out having drinks at "a little country family oriented bar." (Trial Tr. at 8).[2] Clara's children, Allison, Laura and Patrick, were left at home watching television. (Trial Tr. at 8). Clara's children were aware of a phone number which could be used to contact Clara and her husband. (Trial Tr at 8).

At approximately 8:00 P.M., Clara received a phone call from her son. (Trial Tr. at 9). This call prompted Clara and Gene to return to their home. (Trial Tr. at 9). Upon their arrival, Clara spoke to Allison, who was then 17 years of age. (Trial Tr. at 9). Allison informed her that David Pena, Clara's uncle, had stopped at the house and asked her for garbage bags to place clothing into. After giving the bags to Pena, Allison promptly spoke to Clara on the phone. After getting off the phone, Allison saw two men leaving the garage of Clara's home and proceeding back to their vehicle.

After speaking to Allison, Clara went to her garage to investigate what Pena had left there. (Trial Tr. at 9). Clara found an ice chest and two garbage bags containing various jars, pills in a sandwich bag, plastic gallon jugs, a thermos and starter fluid. (Trial Tr. at 15-16, 88). Clara decided to throw out the items because she suspected that they constituted drug paraphernalia (Trial Tr. at 31) and because she did not want to go to jail (Trial Tr. at 16). Clara and Gene put the items in their vehicle, drove out to a nearby creek, threw the items into the creek (Trial Tr. at 19) and returned home (Trial Tr. at 21).

Shortly after 11:00 P.M. there was a knock on Clara's door. (Trial Tr. at 21). Clara

---

[2] Hereinafter "Trial Tr." refers to the first volume of the transcript of the trial on the merits. (Dkt. #79). Hereinafter "Trial Tr., vol. II" refers to the second volume of the transcript of the trial on the merits. (Dkt. #71).

opened her front door and found Pena there.  (Trial Tr. at 21).  Pena asked Clara about the location of his items.  (Trial Tr. at 24).  Clara told him that they were in a Salvation Army dumpster.  (Trial Tr. at 24).  Pena then left in his truck.  (Trial Tr. at 25).

At 1:00 A.M. that morning another knock was heard at Clara's door.  (Trial Tr. at 25).  Pena had returned and again asked Clara where his items were.  (Trial Tr. at 25-26).  Clara did not tell him.  (Trial Tr. at 26).  Pena continued to question Clara for an additional 20 minutes, but she steadfastly would not inform him where she placed his items.  (Trial Tr. at 26).  Pena stated that he was trying to get his life back together and that he needed the money.  (Trial Tr. at 27).  He further stated that Clara was lucky that she was his niece, or else he would have had "messed [her] up."  (Trial Tr. at 27).

After Clara had finished speaking to Pena, Taylor emerged from Pena's truck and proceeded to talk to Clara.  (Trial Tr. at 28-29).  Taylor asked Clara where Pena's items were and why she would not divulge their location.  (Trial Tr. 29-30).  Taylor stated that he had money tied up in the items and that he needed money for rent.  (Trial Tr. at 30).  Taylor further informed Clara that he did not use drugs, but that he sold them.  (Trial Tr. at 32).  In response, Clara refused to identify the location of the items.  (Trial Tr. at 30).  Clara then told Taylor that he would need a boat to find Pena's items.  (Trial Tr. at 30).  Eventually, Pena and Taylor left in their vehicle.  (Trial Tr. at 33).

Once Pena and Taylor departed, Clara decided to call law enforcement.  (Trial Tr at 33).  She did so because Pena had made threatening remarks.  (Trial Tr. at 34).  Clara called the Sheriff's department and within 30 minutes Deputy Ryan Mikulec ("Deputy Mikulec") arrived at her home.  (Trial Tr. at 35).  Clara relayed what had happened to Deputy Mikulec and took him

4

to the creek where she had dumped Pena's items. (Trial Tr. at 35). Upon arrival at the creek, the bags containing Pena's items and the ice chest were found with the use of a spotlight. (Trial Tr. at 36). The bags and chest were then pulled out of the water. (Trial Tr. at 36-37).

Once Pena's items were recovered, Deputy Mikulec brought the items to a DPS office. (Trial Tr. at 117-118). Mikulec inspected the items that he had retrieved. (Trial Tr. at 118). The items were then turned over to DPS. (Trial Tr. at 119).

Ultimately, DPS chemist Hector Cadena ("Cadena") received and analyzed several chemical samples that were taken from Pena's items. (Trial Tr., vol. II at 64-78). Cadena determined that approximately 500 grams of pseudoephedrine tablets were recovered. (Trial Tr., vol II at 67). Cadena testified that approximately 120 grams of pure pseudoephedrine were contained within these tablets. (Trial Tr., vol II at 72-73).

### 2. Testimony of Rhonda Strain

As the trial progressed, the Court heard the testimony of Rhonda Strain ("Strain").[3] Strain's testimony was presented after a limiting instruction was given. (Trial Tr., vol. II at 78-79). Strain, a resident of Victoria, operated a cleaning business (Trial Tr., vol. II at 80) and was familiar with Taylor (Trial Tr., vol. II at 84). Strain was also a methamphetamine addict with pending charges against her. (Trial Tr., vol. II at 81-83). It was established that Strain made a deal with the Government for her testimony. (Trial Tr., vol II at 81).

On two occasions, Strain received methamphetamine from Taylor. (Trial Tr., vol II at

---

[3] Pena and Taylor lodged objections against Strain's testimony based upon Fed. R. Crim. P. 403 and 404(b). (Trial Tr. at 201-05). The Court conducted a hearing outside of the presence of the jury on these matters. Ultimately, the Court determined that Strain's testimony should be admitted.

84-85). She cleaned his house and received the drugs in return. (Trial Tr., vol II at 85).

On January 6, 2002, Taylor called Strain and asked her to purchase certain items related to methamphetamine production. (Trial Tr., vol. II at 85-86). Taylor gave Strain a shopping list and some money for the items. (Trial Tr., vol. II at 86). Taylor also described all of the items on the list to Strain. (Trial Tr., vol. II at 86). Specifically, the list consisted of 28 cans of ether, Prestone starting fluid, eight boxes of Sudafed (24 hour duration), Actifed, Morton salt and eight four-count "E" batteries. (Trial Tr., vol. II at 88). Instead of buying the items, Strain showed Taylor's list to law enforcement. (Trial Tr., vol. II at 88-89). She then returned the money to Taylor, stating that she was too nervous to buy the items. (Trial Tr., vol. II at 89).

On January 9, 2002 Strain happened to be at Taylor's home. (Trial Tr., vol. II at 89). While there, Strain saw co-defendant Pena. (Trial Tr., vol. II at 90).

### 3. Defense Testimony

Cynthia Pena ("Cynthia"), Pena's mother and Clara's grandmother, testified that Clara called her in 2001 about the facts underlying the case and explained that Pena had left work clothes and boots at Clara's home. (Trial Tr., vol. II at 114). Cynthia also testified that Clara had not stated anything about drugs to her at the time. (Trial Tr., vol. II at 115). Cynthia further testified that Pena owed Clara money for cellular phone bills and therefore Clara was "mad" at Pena. (Trial Tr., vol. II at 115).

Dolores Carbajal ("Carbajal"), Clara's mother and Pena's sister, also testified. (Trial Tr., vol. II at 118). According to Carbajal, Clara and Pena did not have amicable relations. (Trial Tr., vol. II at 118-23).

Taylor specifically called Federal Bureau of Investigation Agent Gary Shaw ("Agent

Shaw"). (Trial Tr., vol. II at 124). Agent Shaw testified that he was not aware that Strain was using methamphetamine after December 10. (Trial Tr., vol. II at 125). Agent Shaw further testified that Strain did not report her relapses to him. (Trial Tr., vol. II at 126). Agent Shaw also estimated that the shopping list presented to Strain by Taylor amounted to approximately $300.00 worth of items. (Trial Tr., vol. II at 128). Lastly, Agent Shaw admitted that there was no link between Taylor and the $200 dollars Strain testified about except Strain's word. (Trial Tr., vol. II at 132).

### 4. Government's Rebuttal

Clara was called by the Government on rebuttal. (Trial Tr., vol. II at 140). She testified that she did indeed call Cynthia on either December 13th or 14th. (Trial Tr., vol. II at 140). However, Clara testified that she had only mentioned that Pena left "stuff" rather than clothing at her home. (Trial Tr., vol. II at 141).

Clara also testified that on March 19, 2002 she again talked to Cynthia. (Trial Tr., vol. II at 141). Clara explained that on that occasion, Cynthia was upset with her and claimed that it would be Clara's fault if Pena went to prison. (Trial Tr., vol. II at 142).

Clara testified that on March 27, 2002, she again spoke with Cynthia. (Trial Tr., vol. II at 142). During that discussion, Cynthia again stated that if Clara testified at trial "things would probably happen to [her]." (Trial Tr., vol. II at 143). Notably, Clara testified that "[a]nd just I said, well, I mean, I don't know what I'm going to do, it's just this happened, and you know, my hands are -- are tied, and that if I was to testify against him, that I would be putting him away again she had replied." (Trial Tr., vol. II at 143). No objection to this testimony was made on the record.

### III.  DISCUSSION

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal."  *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 1593 (1982).

Taylor presently raises the following claims: (1) "counsel was ineffective for not requesting an expert witness to counter the prosecutor's analyst as to the actual purity of psuedoephederine [sic] and requesting a Duabert [sic] hearing in accordance with the Supreme Court's decision."  (Dkt. #91 at 4); (2) "ineffective assistance of counsel" because "counsel utterly failed to call any witnesses that could have placed defendant at another location during the time of the offense." (Dkt. #91 at 4); (3) "ineffective assistance of counsel" because "counsel failed to put David Pena on stand which would have supported that Defendant was not there at time of offense" and  because "counsel failed to offer extensive oral argument against the 404(b) evidence and how it was prejudicial and insisting for a mistrial due to the prejudicial statement of Clara Bradley." (Dkt. #91 at 4); and (4) "appellate counsel was ineffective as well" because "counsel failed to raise sufficiency of the evidence properly: counsel failed to raise how rule

404(b) was prejudicial; counsel failed to raise that trial counsel failed to present a proper defense by not calling any witnesses and there seems to be some concern towards a conflict of interest concerning trial counsel Torrey." (Dkt. #91 at 5). The Government has conceded that Taylor's motion is timely (Dkt. #94 at 5). The Court will address each of Taylor's arguments separately.

### A. Expert Witness and *Daubert* Hearing

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. Amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 2064. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 104 S.Ct. at 2064. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

had no effect on the judgment. *Strickland,* 104 S.Ct. at 2066. Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 2068. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 113 S.Ct. 838, 844 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. *Id.*

Taylor maintains that his attorney, Torrey, was ineffective because he failed to call an expert witness to counter Cadena's findings. However, Taylor has not provided any evidence showing how an expert would have testified. Accordingly, the Court finds that Taylor has not adequately demonstrated that he was prejudiced by Torrey's failure to call an expert witness. *See United States v. Drones*, 218 F.3d 496, 504 (5th Cir. 2000)("[A] petitioner must present 'evidence of sufficient quality and force to raise a reasonable probability that,' had it been presented to the jury, the outcome would have been different."(quoting *Ransom v. Johnson*, 126 F.2d 716, 723 (5th Cir. 1997)).

Taylor also argues that Torrey was ineffective because he failed to request a *Daubert* hearing. Taylor apparently wishes to challenge Cadena's qualifications, albeit in a conclusory fashion. (Dkt. #92 at 7-8). However, the record contains evidence showing that at all relevant times: (1) Cadena had a bachelor's degree in chemistry from Texas A & M; (2) Cadena normally worked with controlled substances and the identification of pharmaceutical drugs; (3) Cadena received two months training at the "Austin headquarters laboratory"; (4) Cadena received training from the Drug Enforcement Agency and the Federal Bureau of Investigation; (5) Cadena

had been employed as a DPS chemist for almost five and half years; and (6) Cadena had been qualified as an expert in Court between 30 or 40 times. (Trial Tr., vol. II at 61-63). In light of this evidence, the Court finds that it was not objectively unreasonable for Torrey not to request a *Daubert* hearing. *See United States v. Kimler*, 167 F.3d 889, 892 (5th Cir. 1999)("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

To the extent that Taylor challenges Cadena's testimony that 120 grams of pseudoephedrine could have been extracted from the pills at issue in his case, Taylor's argument fails because he has not demonstrated any prejudice and because he has made conclusory allegations. *United States v. Pineda* 988 F.2d 22, 23 (5th Cir. 1993)("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'")(quoting *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989)). Furthermore, the Fifth Circuit has explicitly affirmed the district court's drug quantity finding. *United States v. Pena*, 71 Fed.Appx. 367, 368 (5th Cir. 2003)(citing *United States v. Shipley*, 963 F.2d 56, 58 (5th Cir. 1992); *United States v. Ponce*, 917 F.2d 841, 842 (5th Cir. 1990)). Taylor has not shown that the drug quantity facts presented in the presentence report or the addendum to the presentence report were materially untrue. *United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000). It would be improper to readdress Taylor's challenge to the weight of the evidence supporting his sentence in this habeas proceeding. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).

### B. Failure to Call Unidentified Witnesses

Taylor maintains that Torrey was ineffective because he failed to call any defense

witnesses and because he failed to properly investigate the case.[4]  To prevail on an allegation that an attorney failed to adequately investigate a case, a petitioner must show what the investigation would have revealed and how it would have helped the petitioner's defense.  *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1983).  Defense counsel are afforded great deference with regard to how they conduct their investigations.  *Green*, 882 F.2d at 1003.  Furthermore, "'[h]ypothetical or theoretical' testimony will not justify the issuance of a writ . . . ."  *Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986).  "[T]he presentation of testimonial evidence is a matter of trial strategy and . . . allegations of what a witness would have testified are largely speculative.'"  *Coble v. Dretke*, 444 F.3d 345, 350 (5th Cir. 2006)(citations omitted).  To demonstrate the requisite *Strickland* prejudice, Taylor must show not only that the testimony in question would have been favorable, but also that the witness would have testified at trial.  *Evans*, 285 F.3d at 377 (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

Taylor has not made any evidentiary showing of what an investigation into his case would have revealed.  Accordingly, Taylor's claim that Torrey failed to adequately investigate his case does not warrant relief.

Similarly, Taylor's claim that Torrey failed to call defense witnesses is also without merit.  Taylor has not identified any potential witnesses and has not presented evidence showing what their testimony would be.  Taylor has not shown that any such witnesses would have testified at his trial.  Also, Taylor has wholly failed to show any prejudice.  Accordingly,

---

[4] To the extent that Taylor argues that Torrey should have called an expert witness regarding pseudoephedrine, the Court has addressed this argument in section (III)(A), *supra*.

Taylor's claim for a failure to call defense witnesses does not warrant relief.

### C. Failure to Call Co-Defendant as a Witness and Failure to "Offer Extensive Oral Argument" Against Rule 404(b) Evidence

Taylor maintains that Torrey was ineffective because he failed to call his co-defendant, Pena, as a witness. However, Taylor has not shown that Pena would have testified. Indeed, Pena could have asserted his Fifth Amendment privilege not to testify. *See United States v. Manges*, 110 F.3d 1162, 1175-76 (5th Cir. 1997)(citing *United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir. 1996)). Taylor also has not shown what Pena's testimony would have amounted to. Lastly, Taylor has not demonstrated any prejudice. Accordingly, Taylor's claim does not warrant relief.

Taylor also argues that Torrey failed to provide more extensive argument against Strain's Rule 404(b) evidence. This issue was directly addressed by the Fifth Circuit on appeal. *Pena*, 71 Fed.Appx. at 368. Substantive claims addressed on direct appeal are procedurally barred from collateral review. *See United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997)(citing *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986)).

### D. Appellate Counsel was Ineffective

Taylor claims that his appellate lawyer, Joe Salinas, was ineffective because: (1) he failed to raise the sufficiency of the evidence properly; (2) counsel failed to raise how Strain's Rule 404(b) evidence was prejudicial; (3) counsel failed to argue that trial counsel was ineffective due to the failure to call witnesses and because trial counsel had a conflict of interest. Taylor's claims are without merit.

Taylor's first and second claims fail because the Fifth Circuit has addressed them on

direct appeal. *Pena*, 71 Fed.Appx. at 368.  In the Fifth Circuit's decision, it is clearly noted that Taylor (through Salinas) argued that Strain's testimony under 404(b) was improper. *Id.*  The Fifth Circuit considered this argument and rejected it.  *Id.*  The Appellate Court rendered its decision after Taylor's first attorney, Torrey, had convinced the district court to carry a motion for mistrial based on the Rule 404(b) evidence forward.  The district court ultimately considered the motion for mistrial and issued a substantial written order denying it.  (Dkt. #55).  In light of these circumstances, the Court finds that Taylor has not shown constitutionally deficient performance by Salinas or sufficient prejudice to warrant relief on his first and second claims.

Taylor's third claim, which involves Salinas' failure to argue that Torrey was ineffective, also fails.  Ineffective assistance of counsel claims are not addressed on appeal except in rare cases where the record is fully developed.  *United States v. Cornett*, 195 F.3d 776, 781 n.2 (5th Cir. 1999)(citing *United States v. Crooks*, 83 F.3d 103, 108 (5th Cir. 1996)).  In this case, claims of ineffective assistance of counsel were not raised or developed in the district court.  Therefore, Salinas did not engage in constitutionally deficient performance by not raising the issue on appeal.  Furthermore, Taylor's ineffective assistance of counsel claim is presently reviewable under 28 U.S.C. § 2255.  *See United States v. Rivas*, 157 F.3d 364, 369 (5th Cir. 1998).  Taylor, however, has failed to demonstrate any constitutionally deficient performance or prejudice.  Accordingly, relief is not warranted on this claim.  To the extent that Taylor argues that a conflict of interest existed between himself and Torrey, this claim is wholly conclusory and unsupported.

## IV.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus

proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Taylor has not yet filed a notice of appeal, this court nonetheless addresses whether he would be entitled to a COA.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denail fo a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

The Court concludes that reasonable jurists could not debate the denial of Taylor's §

2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Taylor cannot establish at least one of the *Slack* criteria. Specifically, jurists of reason would not find this Court's procedural rulings debatable. Accordingly, Taylor is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the above-stated reasons, the Government's motion to dismiss (Dkt. #94) is GRANTED and Taylor's motion under 28 U.S.C. § 2255 (Dkt. #91) is DISMISSED. The Court also DENIES Taylor a Certificate of Appealability.

It is so ORDERED.

Signed this 25th day of September, 2007.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE